JEFFREY S. SHINBROT, ESQ. (SBN 155486)
jeffrey@shinbrotfirm.com
JEFFREY S. SHINBROT, APLC
15260 Ventura Blvd., Suite 1200
Sherman Oaks, CA 91403
Telephone:  (310)  659-5444
Fax:  (310)  878-8304

Proposed Reorganization Counsel for
Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>DOT DOT SMILE, LLC<br><br>        Subchapter V Chapter 11<br>        Debtor and Debtor-In-<br>        Possession. | Case Number: 6:22-bk-13361 WJ<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING:**<br><br>**(1)     USE OF CASH COLLATERAL ON AN INTERIM BASIS; AND**<br><br>**(2)     SETTING FINAL HEARING ON USE OF CASH COLLATERAL**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JEFFREY E. THOMPSON ANNEXED HERETO [LBR FORM 4001-2 & ADDITIONAL EXHIBITS FILED SEPARATELY HEREWITH}.**<br><br>**Date:**  [To be set be Court pursuant<br>**Time:**  Local Bankruptcy Rule 2081-1]<br>**Place:** |

**TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY JUDGE AND TO ALL PARTIES ON THE ANNEXED SERVICE LIST: if no objection**

**PLEASE TAKE NOTICE** that on _____September __, 2022, in Courtroom 304 of the United States Bankruptcy Court for the Central District of California, Riverside Division, located at 3420 Twelfth Street Riverside, CA 92501,  DOT DOT SMILE, LLC, the debtor and debtor-in-possession in the above entitled Chapter 11 proceeding ("Debtor" or "DDS"), whose chapter 11 case was commenced on September 3, 2022 ("Petition Date") will and hereby does move pursuant 11 U.S.C. §§ 105(a), 361, 363, 1107(a) and 1109, Bankruptcy Rule 4001, and Local Bankruptcy Rule 2081-1 for an order granting the following relief:

(1)　　Authorizing the immediate use of all cash and cash equivalents on hand and hereafter received, on an interim basis, to pay ordinary and necessary operating expenses in accordance with the budget attached as Exhibit "1" to the accompanying Declaration of Jeffrey Thompson (the "Thompson Declaration"), and permitting the carryover of any unused but authorized use of cash from month-to-month;

(2)　　Authorizing the Debtor to exceed any line item in the budget by up to fifteen percent (15%) in any one month, as long as the overage for all items in the aggregate does not exceed fifteen percent (15%) of the total budget amount for that month, with the budget savings in one month to be carried over into subsequent months.

**PLEASE TAKE NOTICE** that the Debtor proposes to use cash collateral of its Merchant Cash Advance lenders that allege to be secured by the Debtor's accounts receivables and other estate assets, collectively the "Secured Creditors," in order to, amongst other expenses set forth in the attached budget, maintain and preserve its

CASH COLLATERAL MOTION

1  business and value for the benefit of this estate and its creditors and pay creditors through

2  a subchapter V plan.  The Debtor expects to continue operations, rebuild its revenue

3  stream and timely propose its chapter 11 plan and must have use of cash collateral in order

4  to complete this plan.

5      **PLEASE TAKE FURTHER NOTICE** that any opposition or other responsive

6  pleadings must be in the form as required by Rules 9013-1(f) of the Local Bankruptcy

7  Rules ("LBR") and filed with the Clerk of the above-entitled Court no later than fourteen

8  days (14) prior to the hearing with a copy served on Jeffrey S. Shinbrot at the address

9  indicated in the caption above.  A copy must also be served on the Office of the United

10  States Trustee, 3801 University Ave, Suite 720 Riverside, CA 92501.  Failure to timely

11  respond may be deemed as acceptance of the relief requested. See LBR 2016-1(a)(3) and

12  9013-1(f).  The Motion is based on the record of this case, the attached Declaration and

13  Exhibits and argument and evidence as may be permitted at time of hearing on the

14  Motion.

15      **WHEREFORE**, the Debtor prays that the Court enter an order granting the relief

16  requested above, and such additional relief as the Court deems just and proper.

17                                        Respectfully submitted,

18  Dated:  September 8, 2022              JEFFREY S. SHINBROT, APLC

19

20                                        By: /s/Jeffrey S. Shinbrot
                                              Jeffrey S. Shinbrot, Proposed General
21                                            Insolvency Counsel for DOT DOT
                                              SMILE, LLC
22

23

24

25

26

27

28

## MEMORANDUM AND POINTS AND AUTHORITIES

## I.

## CASE BACKGROUND AND SUMMARY OF THE MOTION[1]

A.    The Debtor and Events Precipitating the Filing

The principal purpose of a chapter 11 case is to provide breathing space to a debtor so that a plan may be implemented that pays creditors in accordance with the priorities of the Bankruptcy Code. Companies that have the ability to create revenues therefore usually have the highest chance of a successful chapter 11 case. Dot Dot Smile, LLC ("DDS" or the "Debtor") was created in 2013 by Nicole and Jeff Thompson to provide superior quality and custom design children's clothing. Its designs and fabrics were very well received by consumers as reflected in the company's success and rapid growth, resulting in nearly $15,000,000 in revenues in 2020. This Debtor has a demonstrated ability to create popular clothing product and revenue and respectfully requests that the Bankruptcy Court permit it to rebuild its business so that it may pay its creditors in accordance with the law.

In 2017, DDS adopted a Multi-Level Marketing sales model and in 2019 the company moved to its current location, a 72,000 square foot warehouse in Riverside, California. DDS's popularity and growth continued, resulting in significant increases in year-over-year revenues. Unfortunately, inventory shortages caused by the COVID 19 pandemic impacted DDS's ability to recruit and build new teams under the MLM model and, after unsuccessful attempts and obtaining financing, the Debtor borrowed from Merchant Cash Advance lenders and increased its orders for product. By the time the new inventory arrived, demand under the MLM model had waned, a result of the difficulties associated with the MLM business model during the pandemic. Despite these challenges, DDS continued to have a loyal following and a viable brand and therefore pivoted to warehouse sales and the opening of its Carlsbad Premium Outlet location. However, as a

---

[1] The facts in this Motion are based on the Declaration of Jeffrey E. Thompson and Exhibits thereto.

1  result of these challenges in the retail clothing environment, DDS's cash flow was

2  impacted resulting in lawsuits and collection efforts by the Merchant Cash Lenders and an

3  eviction lawsuit filed by the owner of the Debtor's Riverside location.  DDS has filed the

4  instant chapter 11 case to rebuild its company and pay creditors.

5      DDS currently has significant assets to rebuild its business, including:

6      a.    DDS has approximately $2,000,000 of inventory on-hand which

7           includes desirable products and generate significant revenues from

8           retail and online sales.

9      b.    Pre-Petition, the Debtor negotiated a proposed sublet agreement of its

10          72,700 square foot commercial space in Riverside, California, which

11          included a sale of its racking system located at the premises to the

12          proposed sub-tenant.  While indicating an interest in the sub-lease

13          agreement, the landlord filed an unlawful detainer action, which has

14          been stayed by the bankruptcy filing.  The Debtor expects to seek

15          approval of the sub-let agreement or assumption and assignment of

16          the lease as in its current state it does not require 72,700 square feet

17          of space.

18     c.    The Debtor has applied for Employee Retention Credits in the

19          amount of $117,424 in 2020 and $363,306 in 2021, which should

20          result in $480,730 to the estate to fund operations and pay creditors

21          through a subchapter V plan.

22   B.    The MCA Lenders

23      Over the last decade, there has been an increase in high interest lending schemes

24  targeting small businesses like the Debtor.  These *loans* have exorbitantly high interest

25  rates, running into the hundreds of percent on an annual percentage basis, the

26  documentation and funding are provided with no real opportunity for review or

27  negotiation—i.e., are contracts of adhesion and use DocuSign, which provides the ability

28  to electronically sign documents but causes the document to jump directly to the signature

lines to dissuade borrowers from reading the documents. The lenders purport to "purchase" future receivables of the Debtor, yet in contradiction to the agreements, also file UCC1 financing statements.  The *loans* are the subject of multiple defenses and counter-claims as being fraudulent, usurious, illegal, deceptive, predatory and not enforceable. However, the lenders rely on the financial weakness and naivety of the borrowers and the use of highly questionable legal tactics, including, without limitation, individual guaranties to assert their highly questionable legal fiction of ownership of receivables. Filed concurrently herewith are the loan documents for the Debtor's MCA debt, excerpts from the documents are included in the below chart, but admittedly, the documents contradict themselves as to what the nature of the transaction truly is.  The Debtor's alleged secured debt structure consists of these type of MCA lenders as follows:

| CLAIMANT | EST AMOUNT OF CLAIM ON PETITION DATE | ALLEGED SECURITY INTERESTS | DATE DEBT INCURRED |
|---|---|---|---|
| Cedar Advance, LLC | $285,945 | "Purchase of 25 percent of Debtor's future receivables" | May 11, 2021 |
| Everest/EBF Holdings | $195,720 | Debtor "hereby sells, assigns and transfers to purchaser without recourse, upon payment of the Purchase Price , the Purchased Amount of Future Receipts by delivering Purchaser the Specified Percentage of the proceeds of each future sale by Seller." (the specified amount is 15%) | March 18, 2021 |
| Cloudfund LLC | $134,910 | Debtor "hereby sells, assigns, transfers and conveys (hereinafter, the "Sale") unto Buyer all of Seller's right, title and interest in to the Specified | November 26, 2021 |

3

| | | Percentage of the Future Receipts until the Purchased Amount shall have been delivered by Seller to Buyer . . . ." (amount is 20%) | |
|---|---|---|---|
| Fox Capital Group, Inc. | $395,000 | "Purchase of 15 percent of the Debtor's receivables" Debtor "hereby sells, assigns, and transfers to FCG (making FCG the absolute owner) in consideration of the Purchase Price specified above, the Purchased Percentage of all of Merchant's future accounts, receivables, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers, vendees and/ or other third-party payors." | December 20, 2021 & January 20, 2022 |
| Wynwood Capital Group | $107,928 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned, acquired or arising, and all of the debtor's books and records relating to any of the foregoing" (amount is 20% of receivables) | March 18, 2022 |
| Quick Funding Group, LLC | $78,875 | "Merchant is selling a portion of a future revenue stream to QFG at a | April 29, 2022 |

| | | discount, not borrowing money from QFG, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by QFG. (10%) | |
|---|---|---|---|
| Mercury Funding Group, Inc. | $126,684. | Sale of "All accounts receivables associated with the company." (16%) | March 2, 2022 |
| **ESTIMATED TOTALS** | **$1,325,062.00** | | |

These disputed claims total 121% of the Debtor's receivables, however the Debtor does not typically accrue receivables. Further, as set forth in the annexed budget, the Debtor shall generate $126,000 monthly from ongoing operations of the Debtor's business. The MCA's are also protected by the Debtor's $2,000,000 inventory on hand, both to the extent that they may have security interests and in the ongoing business operations of the Debtor. The MCAs are also protected by personal guarantees of the Debtor's principals.

   C.    Bankruptcy Rule 4001 and Concise Statement of Relief:

   The Debtor proposes to use cash collateral in which the MCA's may claim an interest in order to fund its ongoing operations. The Debtor asserts that the MCA's are adequately protected because: (i) the use of cash collateral will enable the Debtor to continue its operations and perform and collect receivables (ii) the Debtor will, subject to this Court's approval, grant replacement liens to the MCA's in the proceeds of their collateral to the extent any of the MCA's had valid security interests on the Petition Date. The Debtor proposes to use cash collateral on an interim basis, subject to further extension, and finally through confirmation of the Debtor's chapter11 plan.

   The Debtor must have the use of all cash and cash equivalents on hand, as well as

1  those generated in the future ("Cash Collateral"), in order to pay its ongoing operating

2  expenses.  Without this immediate relief allowing Debtor to continue its operations, the

3  Debtor may be unable to operate and ultimately fund its subchapter V plan.

4  **II.**

5  **<u>THE DEBTOR SHOULD BE AUTHORIZED TO USE</u>**

6  **<u>CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363</u>**

7  The provisions of 11 U.S.C. § 363(c)(2) govern the use of cash collateral.  Section

8  363(c)(2) provides, in pertinent part, as follows:

9  The trustee may not use, sell or lease cash collateral  . . . unless:

10  A.    Each entity that has an interest in such cash collateral consents; or

11  B.    The court, after notice and a hearing, authorizes such use, sale, or lease in

12  accordance with the provisions of this section.

13  11 U.S.C. § 363.

14  However, the Court may authorize use of a creditor's cash collateral in the absence

15  of creditor consent.  Section 363(e) of the Bankruptcy Code provides that, upon the

16  request of an entity that has an interest in property proposed to be used by the debtor, the

17  court must prohibit or condition such use "as is necessary to provide adequate protection

18  of such interest."  Therefore, this Court may authorize the Debtor's use of any Cash

19  Collateral upon determining that his interests the cash collateral will be adequately

20  protected.  *In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988).

21  In *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S.

22  365 (1988), the United States Supreme Court analyzed and quantified the parameters of

23  the "interest in property," referenced in §§ 362(d)(1), 361 and 363(e), which the

24  Bankruptcy Code undertakes to protect, where required, through adequate protection.

25  This analysis led the Court in *Timbers* to the conclusion that the "interest in property"

26  referenced in the above sections of the Bankruptcy Code means, and is limited to, the

27  "value of the collateral."  *Id.*  Therefore, under the *Timbers* analysis, the adequate

28  protection provisions in the Bankruptcy Code only protect a secured creditor from a

1  potential *diminution in the value of that creditor's collateral* during the post-petition

2  period. *Id.*

3        The "value" oriented adequate protection analysis adopted by the Supreme Court in

4  the *Timbers* case has been closely adhered to by the courts which have subsequently had

5  occasion to address this issue. *See e.g.*, *In re Ledgemere Land Corp.*, 116 B.R. 338, 343

6  (Bankr. D. Mass. 1960) [so long as the receivables being collected and used by the debtor

7  are being replaced by sufficient new receivables in which the creditor is granted a security

8  interest, creditor is adequately protected]; *In re Johnson*, 60 B.R. 973, 978 (Bankr. D.

9  Minn. 1988) [since value of the collateral has not declined, secured creditor is not

10  impaired and is not entitled to receive adequate protection payments]; *In re Century Inv.*

11  *Fund VII Ltd. Partnership,* 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) [where value

12  appears to be stable, secured creditor is not entitled to adequate protection payments]; *In*

13  *re Kessler,* 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) [under *Timbers*, secured creditors are

14  not entitled to adequate protection payments, as there was no showing that collateral was

15  depreciating in value]; *In re Anderson,* 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) [secured

16  creditor required to show a necessity for adequate protection by showing a decline in asset

17  value from the petition date].  In other words, if the collateral's value is likely to be

18  sustained by new receivables or increase over the life of the Chapter 11, the creditor is

19  adequately protected.  The use of cash collateral for the preservation of the value of a

20  secured creditor's lien is in and of itself sufficient to provide adequate protection to a

21  secured creditor for use of those funds.  *Federal Natl. Mortgage v. Dacon Bollingsbrook*

22  *Associates Limited Partshersip*, 153 B.R. 204, 214 (N.D. Ill 193); *In re Oak Glen R-Vee*, 8

23  B.R. 213, 216 (Bankr. C.D. Cal. 1981).

24        Courts have "adopted a holistic approach, . . . the issue of adequate protection, . . .

25  is measured by an analysis of all of the relevant facts, with a particular focus upon the

26  value of the collateral, the likelihood that it will depreciate or appreciate over time, the

27  prospects for successful reorganization of the Debtor's affairs by means of the Plan, and

28  the Debtor's performance in accordance with the Plan." *Carlton House [Partners, Ltd.,* 91

1   B.R. 349, at 357 [Bankr.E.D. Pa.1988] (quoting *In re Tashjian*, 72 B.R. 968, 973

2   (Bankr.E.D.Pa.1987)).  Courts have found secured creditors to be adequately protected

3   where the debt is secured by the debtor's assets and a collectible personal guaranty from a

4   non-debtor.  *See In re In re Eureka Southern R.R., Inc*., 72 B.R. 813 (Bankr. N.D. Cal.

5   1987) [denying secured creditor's motion for relief from the automatic stay because

6   creditor was adequately protected by a guaranty]; *In re Cobbs*, 20 B.R. 606 (1982) ["a

7   mortgage guarantee may provide the mortgagee with 'adequate protection'"].  In *Eureka*

8   *Southern R.R.*, the bankruptcy court held that the obligation to the secured creditor was

9   adequately protected by a guaranty where the guaranty ensured that the creditor would

10  collect on the obligation.  The secured creditor argued that the guaranty was "contingent,

11  monetarily inadequate, and necessarily delayed."  *Id.* at 820.  The court disagreed, finding

12  that the guaranty would ensure that the secured creditor did not suffer any loss.

13      Likewise, "legislative history expressly refers to guaranties as a basis for providing

14  adequate protection." *In re Diaconx Corp*., 69 B.R. 333, 338–39 (Bankr. E.D. Pa. 1987)

15  (citing H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 340 *339 (1977), U.S. Code Cong. &

16  Admin. News 1978, p. 5787.)  "Particularly when a guaranty is secured, it may be a

17  component of an adequate protection package." *Id.* (citing *In re Greenwood Building*

18  *Supply, Inc.,* 23 B.R. 720 (Bankr. W.D.Mo. 1982); *In re Earth Lite, Inc.,* 9 B.R. 440

19  (Bankr. M.D. Fla. 1981); *accord, In re Mary Harpley Builder, Inc.,* 44 B.R. 151 (Bankr.

20  N.D. Ohio 1984) (dictum)).  "Other factors may also permit a finding that even an

21  unsecured guaranty constitutes adequate protection." *Id.* (citing *Commonwealth of*

22  *Pennsylvania State Employees Retirement Fund v. Roane,* 14 B.R. 542 (E.D.Pa.1981)

23  (federal mortgage guaranty can constitute adequate protection).

24      Here, the MCA's interests in cash collateral are adequately protected (to the extent

25  that they are in fact secured creditors) by the business operations of the Debtor and

26  $2,000,000 of inventory. Additionally, as set forth in the annexed budget, the Debtor

27  expects to generate $126,000 monthly from ongoing operations of the Debtor's business.

28      The law is clear: no adequate protection payments are required unless there is a

1   decline in the value of the secured creditor's collateral that actually impairs the creditors'

2   secured claim.  The Debtor's request to use cash will protect that value of this estate's

3   principal assets – its business operations—and ensure that the collateral continues to

4   increase in value.

5                                          **III.**

6                **THE DEBTOR HAS MET ITS ADEQUATE PROTECTION BURDEN**

7        The Secured Creditors are protected from a diminution in value through significant

8   customer contracts, continued operations and replacement liens and through the personal

9   guaranty.  The Debtor proposes that the Secured Creditors be granted replacement liens,

10  to the same extent, validity and priority as they now hold, on property acquired with cash

11  collateral with a value equal to the amount of the cash collateral expended by the Debtor.

12       In summary, the Thompson Declaration, the evidence submitted herewith, the

13  Debtor establish with reasonable certainty that the Secured Creditor's alleged interest in

14  cash collateral is, and will continue to be, adequately protected.

15                                         **IV.**

16                **CONCLUSION AND REQUEST FOR RELIEF**

17       Based upon the foregoing, the purported interests of secured creditors are

18  adequately protected.  In light of the foregoing, the Debtor respectfully requests that this

19  Court enter its Order:

20       (1)    Authorizing the immediate use of all cash and cash equivalents on hand and

21              hereafter received to pay ordinary and necessary operating expenses in

22              accordance with the cash flow projections/budget attached as Exhibit "1" to

23              the accompanying Thompson Declaration, and permitting the carryover of

24              any unused but authorized use of cash from month-to-month;

25       (2)    Authorizing the Debtor to exceed any line item in the budget by up to fifteen

26              percent (15%) in any one month, as long as the overage for all items in the

27              aggregate does not exceed fifteen percent (15%) of the total budget amount

28

9

1    for that month, with the budget savings in one month to be carried over into

2    subsequent months;

3    (3)    Setting a final hearing on the Motion; and

4    (4)    Granting such further relief as the Court deems just and proper.

5

6    Dated: September 8, 2022                    JEFFREY S. SHINBROT, APLC

7

8                                    By:/s/Jeffrey S. Shinbrot
                                        JEFFREY S. SHINBROT, ESQ.
9                                       Proposed Reorganization Counsel for
                                        Debtor-In-Possession
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JEFFREY E. THOMPSON

I, JEFFREY E. THOMPSON, declare as follows:

1.      I am over the age of eighteen and I am the Chief Executive Officer and Managing Member of DOT DOT SMILE, LLC ("Debtor" or "DDS").  As to the following facts, I know them of my own personal knowledge, except where stated on information and belief, and if called as a witness, I could and would testify as set forth herein.  I am one of the custodians of the books and records of the Debtor and I have gained knowledge of such records which were made at or about the time of the events recorded, and which were maintained in the ordinary course of the Debtor's business at or near the time of such acts, conditions or events to which they relate, any such document was prepared in the ordinary course of the business of the Debtor by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.

2.      On September 3, 2022, ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code").  The Debtor is continuing in the operation and management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

### Background of the Dot Dot Smile

3.      Dot Dot Smile, LLC ("DDS" or the "Debtor") was created in 2013 by my wife Nicole and I to provide superior quality and custom design children's clothing. Nicole's designs and fabric choices were very well received by consumers as reflected in the company's success and rapid growth, resulting in nearly $15,000,000 in revenues in 2020.  As demonstrated in our company's rapid growth, despite DDS's current problems, I believe that Nicole and I possess the *know how* to create popular clothing products and revenue.  The intent of the DDS chapter 11 filing was to use these skills and experience to rebuild its business so that it may pay its creditors in accordance with the law.

4.      In 2017, DDS adopted a Multi-Level Marketing sales model and in 2019 the company moved to its current location, a 72,000 square foot warehouse in Riverside, California.  DDS's popularity and growth continued, resulting in significant increases in

1

year-over-year revenues.  Unfortunately, inventory shortages caused by the COVID 19 pandemic impacted DDS's ability to recruit and build new teams under the MLM model and, after unsuccessful attempts and obtaining financing, the Debtor borrowed from Merchant Cash Advance lenders and increased its orders for product. By the time the new inventory arrived, demand under the MLM model had waned, a result of the difficulties associated with the MLM business model during the pandemic.

5.     Despite these challenges, DDS continued to have a loyal following and a viable brand and therefore we pivoted to warehouse sales and the opening of its Carlsbad Premium Outlet location.  However, as a result of these challenges in the retail clothing environment, DDS's cash flow was impacted resulting in lawsuits and collection efforts by the Merchant Cash Lenders and an eviction lawsuit filed by the owner of the Debtor's Riverside location.

**Approval of the Cash Collateral Budget is Appropriate**

6.     DDS has significant assets to rebuild its business, which includes $2,000,000 of inventory on-hand (and which includes desirable products and generate significant revenues from retail and online sales).  Prior to the filing of the chapter 11 case DDS negotiated a proposed sublet agreement of its 72,700 square foot commercial space in Riverside, California, which included a sale of its racking system located at the premises to the proposed sub-tenant.  While indicating an interest in the sub-lease agreement, the landlord filed an unlawful detainer action, which has been stayed by the bankruptcy filing.  The Debtor expects to seek approval of the sub-let agreement or assumption and assignment of the lease as in its current state it does not require 72,700 square feet of space. The Debtor has applied for Employee Retention Credits in the amount of $117,424 in 2020 and $363,306 in 2021, which should result in $480,730 to the estate to fund operations and pay creditors through a subchapter V plan.

///

///

///

///

///

DECLARATION IN SUPPORT OF
CASH COLLATERAL MOTION

7.   The current MCA *secured debt* structure of the Debtor is as follows:

| CLAIMANT | EST AMOUNT OF CLAIM ON PETITION DATE | ALLEGED SECURITY INTERESTS | DATE DEBT INCURRED |
|---|---|---|---|
| Cedar Advance, LLC | $285,945 | "Purchase of 25 percent of Debtor's future receivables" | May 11, 2021 |
| Everest/EBF Holdings | $195,720 | Debtor "hereby sells, assigns and transfers to purchaser without recourse, upon payment of the Purchase Price , the Purchased Amount of Future Receipts by delivering Purchaser the Specified Percentage of the proceeds of each future sale by Seller." (the specified amount is 15%) | March 18, 2021 |
| Cloudfund LLC | $134,910 | Debtor "hereby sells, assigns, transfers and conveys (hereinafter, the "Sale") unto Buyer all of Seller's right, title and interest in to the Specified Percentage of the Future Receipts until the Purchased Amount shall have been delivered by Seller to Buyer . . . ." (amount is 20%) | November 26, 2021 |
| Fox Capital Group, Inc. | $395,000 | "Purchase of 15 percent of the Debtor's receivables" Debtor "hereby sells, assigns, and transfers to FCG (making FCG the absolute owner) in consideration of the Purchase Price speci☐ed above, the | December 20, 2021 & January 20, 2022 |

DECLARATION IN SUPPORT OF
CASH COLLATERAL MOTION

| | | Purchased Percentage of all of Merchant's future accounts, receivables, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers, vendees and/ or other third-party payors." | |
|---|---|---|---|
| Wynwood Capital Group | $107,928 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned, acquired or arising, and all of the debtor's books and records relating to any of the foregoing" (amount is 20% of receivables) | March 18, 2022 |
| Quick Funding Group, LLC | $78,875 | "Merchant is selling a portion of a future revenue stream to QFG at a discount, not borrowing money from QFG, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by QFG. (10%) | April 29, 2022 |
| Mercury Funding Group, Inc. | $126,684. | Sale of "All accounts receivables associated with the company." (16%) | March 2, 2022 |
| **ESTIMATED TOTALS** | **$1,325,062.00** | | |

8.    Annexed hereto as Exhibit 1 is a proposed budget (the "Budget"). If the Budget is approved, we will employ a limited staff as we rebuild the business of DDS. We will not pay any wages of insiders prior to compliance with the requirements of the United States Trustee.

9.    Finally, the Debtor is expected to generate approximately $31,500 weekly ($126,000 monthly) from the ongoing operations and rebuilding of the Debtor's business. The proposed budget is annexed hereto as Exhibit 1.

10.    Annexed hereto as Exhibit 2 is a proposed Order on the instant motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 7, 2022 at Riverside, California.

Jeffrey E. Thompson

DECLARATION IN SUPPORT OF
CASH COLLATERAL MOTION

EXHIBIT 1

**Dot Dot Smile, LLC**
**Income Statement**
**FYE 2022 - Weekly**

| 6-Sep-22 | Forecast 9/5-9/9 | | Forecast 9/12-9/16 | | Forecast 9/19-9/23 | | Forecast 9/26-9/30 | | Forecast Sept. 2022 | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | |
| **Gross Receipts** | **31,500** | | **31,500** | | **31,500** | | **31,500** | | **126,000** | |
| | | | | | | | | | | |
| **Cost of Sales** | | | | | | | | | | |
| Beginning Inventory | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Cost of Goods Sold | 9,450 | 30.00% | 9,450 | 30.00% | 9,450 | 30.00% | 9,450 | 30.00% | **37,801** | 30.00% |
| Merchant Fees | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Freight and Shipping | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Ending Inventory | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| **Cost of Goods Sold** | **9,450** | **30.00%** | **9,450** | **30.00%** | **9,450** | **30.00%** | **9,450** | **30.00%** | **37,801** | **30.00%** |
| YTD COGS | | | | | | | | | | |
| **Gross Profit** | **22,050** | | **22,050** | | **22,050** | | **22,050** | | **88,199** | |
| **GPM (% of GRcpts)** | **70.00%** | | **70.00%** | | **70.00%** | | **70.00%** | | **70.00%** | |
| YTD Gross Profit | | | | | | | | | | |
| **General & Adminstrative Expenses** | | | | | | | | | | |
| Advertising and Promotion | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Commissions Expense | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Contract Labor | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Depreciation Expense | 625 | 1.98% | 625 | 1.98% | 625 | 1.98% | 625 | 1.98% | **2,500** | 1.98% |
| Employee Benefits | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Insurance Expense | 1,036 | 3.29% | 1,036 | 3.29% | 1,036 | 3.29% | 1,036 | 3.29% | **4,145** | 3.29% |
| Interest Expense | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| CFO Fee (subject to court approval) | 875 | 2.78% | 875 | 2.78% | 875 | 2.78% | 875 | 2.78% | **3,500** | 2.78% |
| SubChapter V and Other Chapter 11 Administrative Fees (subject to court approval) | 1,165 | 3.70% | 1,165 | 3.70% | 1,165 | 3.70% | 1,165 | 3.70% | **4,660** | 3.70% |
| Office Expense | 38 | 0.12% | 38 | 0.12% | 38 | 0.12% | 38 | 0.12% | **150** | 0.12% |
| Rent Expense | 1,250 | 3.97% | 1,250 | 3.97% | 1,250 | 3.97% | 1,250 | 3.97% | **5,000** | 3.97% |
| Tax & License | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | **1,000** | 0.79% |
| Travel Expense | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Deductible Meals | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Utilities | 375 | 1.19% | 375 | 1.19% | 375 | 1.19% | 375 | 1.19% | **1,500** | 1.19% |
| Payroll Expenses (Insider Payroll paid only pursuant to UST guidelines) | 8,750 | 27.78% | 8,750 | 27.78% | 8,750 | 27.78% | 8,750 | 27.78% | **35,001** | 27.78% |
| Alarm & Security | 32 | 0.10% | 32 | 0.10% | 32 | 0.10% | 32 | 0.10% | **128** | 0.10% |
| Automobile Expense | 102 | 0.32% | 102 | 0.32% | 102 | 0.32% | 102 | 0.32% | **408** | 0.32% |
| Bank Service Charges | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | **500** | 0.40% |
| Computer and Internet | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Dues and Subscriptions | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Payroll Processing Fees | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Research & Development | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Charitable Donations | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Marketing | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | **500** | 0.40% |
| Backoffice Software | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Janitorial Expense | 63 | 0.20% | 63 | 0.20% | 63 | 0.20% | 63 | 0.20% | **250** | 0.20% |
| Telephone Expense | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Parking | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Loan Fee | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Credit Card/Merchant Fee | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | **1,000** | 0.79% |
| Misc. Expense | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Warehouse Expense | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Continuing Education | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| **Total S, G & A Expenses** | **15,623** | | **15,623** | | **15,623** | | **15,623** | | **62,492** | |
| Operating Expense (% of GR) | **49.60%** | | **49.60%** | | **49.60%** | | **49.60%** | | **49.60%** | |
| | | | | | | | | | | |
| **Net Profit Before Taxes** | **6,427** | | **6,427** | | **6,427** | | **6,427** | | **25,707** | |

**Dot Dot Smile, LLC**
**Income Statement**
**FYE 2022 - Weekly**

| | 6-Sep-22 | Forecast 10/3-10/7 | | Forecast 10/10-10/14 | | Forecast 10/17-10/21 | | Forecast 10/24-10/28 | | Forecast Oct. 2022 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| **Gross Receipts** | | **31,500** | | **31,500** | | **31,500** | | **31,500** | | **126,000** | |
| | | | | | | | | | | | |
| **Cost of Sales** | | | | | | | | | | | | |
| Beginning Inventory | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Cost of Goods Sold | | 9,450 | 30.00% | 9,450 | 30.00% | 9,450 | 30.00% | 9,450 | 30.00% | **37,801** | 30.00% |
| Merchant Fees | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Freight and Shipping | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Ending Inventory | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| **Cost of Goods Sold** | | **9,450** | **30.00%** | **9,450** | **30.00%** | **9,450** | **30.00%** | **9,450** | **30.00%** | **37,801** | **30.00%** |
| YTD COGS | | | | | | | | | | | |
| **Gross Profit** | | **22,050** | | **22,050** | | **22,050** | | **22,050** | | **88,199** | |
| GPM (% of GRcpts) | | **70.00%** | | **70.00%** | | **70.00%** | | **70.00%** | | **70.00%** | |
| YTD Gross Profit | | | | | | | | | | | |
| **General & Adminstrative Expenses** | | | | | | | | | | | |
| Advertising and Promotion | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Commissions Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Contract Labor | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Depreciation Expense | | 625 | 1.98% | 625 | 1.98% | 625 | 1.98% | 625 | 1.98% | **2,500** | 1.98% |
| Employee Benefits | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Insurance Expense | | 1,036 | 3.29% | 1,036 | 3.29% | 1,036 | 3.29% | 1,036 | 3.29% | **4,145** | 3.29% |
| Interest Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| CFO Fee (subject to court approval) | | 875 | 2.78% | 875 | 2.78% | 875 | 2.78% | 875 | 2.78% | **3,500** | 2.78% |
| SubChapter V and Other Chapter 11 Administrative Fees (subject to court approval) | | 1,165 | 3.70% | 1,165 | 3.70% | 1,165 | 3.70% | 1,165 | 3.70% | **4,660** | 3.70% |
| Office Expense | | 38 | 0.12% | 38 | 0.12% | 38 | 0.12% | 38 | 0.12% | **150** | 0.12% |
| Rent Expense | | 1,250 | 3.97% | 1,250 | 3.97% | 1,250 | 3.97% | 1,250 | 3.97% | **5,000** | 3.97% |
| Tax & License | | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | **1,000** | 0.79% |
| Travel Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Deductible Meals | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Utilities | | 375 | 1.19% | 375 | 1.19% | 375 | 1.19% | 375 | 1.19% | **1,500** | 1.19% |
| Payroll Expenses (Insider Payroll paid only pursuant to UST guidelines) | | 8,750 | 27.78% | 8,750 | 27.78% | 8,750 | 27.78% | 8,750 | 27.78% | **35,001** | 27.78% |
| Alarm & Security | | 32 | 0.10% | 32 | 0.10% | 32 | 0.10% | 32 | 0.10% | **128** | 0.10% |
| Automobile Expense | | 102 | 0.32% | 102 | 0.32% | 102 | 0.32% | 102 | 0.32% | **408** | 0.32% |
| Bank Service Charges | | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | **500** | 0.40% |
| Computer and Internet | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Dues and Subscriptions | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Payroll Processing Fees | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Research & Development | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Charitable Donations | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Marketing | | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | **500** | 0.40% |
| Backoffice Software | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Janitorial Expense | | 63 | 0.20% | 63 | 0.20% | 63 | 0.20% | 63 | 0.20% | **250** | 0.20% |
| Telephone Expense | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Parking | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Loan Fee | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Credit Card/Merchant Fee | | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | **1,000** | 0.79% |
| Misc. Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Warehouse Expense | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Continuing Education | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| **Total S, G & A Expenses** | | **15,623** | | **15,623** | | **15,623** | | **15,623** | | **62,492** | |
| Operating Expense (% of GR) | | **49.60%** | | **49.60%** | | **49.60%** | | **49.60%** | | **49.60%** | |
| | | | | | | | | | | | |
| **Net Profit Before Taxes** | | **6,427** | | **6,427** | | **6,427** | | **6,427** | | **25,707** | |

**Dot Dot Smile, LLC**
**Income Statement**
**FYE 2022 - Weekly**

| | 6-Sep-22 | Forecast 10/31-11/4 | | Forecast 11/7-11/11 | | Forecast 11/14-11/18 | | Forecast 11/21-11/25 | | Forecast Nov. 2022 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| **Gross Receipts** | | **31,500** | | **31,500** | | **31,500** | | **31,500** | | **126,000** | |
| | | | | | | | | | | | | |
| **Cost of Sales** | | | | | | | | | | | | |
| Beginning Inventory | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Cost of Goods Sold | | 9,450 | 30.00% | 9,450 | 30.00% | 9,450 | 30.00% | 9,450 | 30.00% | **37,801** | 30.00% |
| Merchant Fees | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Freight and Shipping | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Ending Inventory | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| **Cost of Goods Sold** | | **9,450** | **30.00%** | **9,450** | **30.00%** | **9,450** | **30.00%** | **9,450** | **30.00%** | **37,801** | **30.00%** |
| YTD COGS | | | | | | | | | | | |
| **Gross Profit** | | **22,050** | | **22,050** | | **22,050** | | **22,050** | | **88,199** | |
| GPM (% of GRcpts) | | **70.00%** | | **70.00%** | | **70.00%** | | **70.00%** | | **70.00%** | |
| YTD Gross Profit | | | | | | | | | | | |
| **General & Adminstrative Expenses** | | | | | | | | | | | |
| Advertising and Promotion | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Commissions Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Contract Labor | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Depreciation Expense | | 625 | 1.98% | 625 | 1.98% | 625 | 1.98% | 625 | 1.98% | **2,500** | 1.98% |
| Employee Benefits | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Insurance Expense | | 1,036 | 3.29% | 1,036 | 3.29% | 1,036 | 3.29% | 1,036 | 3.29% | **4,145** | 3.29% |
| Interest Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| CFO Fee (subject to court approval) | | 875 | 2.78% | 875 | 2.78% | 875 | 2.78% | 875 | 2.78% | **3,500** | 2.78% |
| SubChapter V and Other Chapter 11 Administrative Fees (subject to court approval) | | 1,165 | 3.70% | 1,165 | 3.70% | 1,165 | 3.70% | 1,165 | 3.70% | **4,660** | 3.70% |
| Office Expense | | 38 | 0.12% | 38 | 0.12% | 38 | 0.12% | 38 | 0.12% | **150** | 0.12% |
| Rent Expense | | 1,250 | 3.97% | 1,250 | 3.97% | 1,250 | 3.97% | 1,250 | 3.97% | **5,000** | 3.97% |
| Tax & License | | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | **1,000** | 0.79% |
| Travel Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Deductible Meals | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Utilities | | 375 | 1.19% | 375 | 1.19% | 375 | 1.19% | 375 | 1.19% | **1,500** | 1.19% |
| Payroll Expenses (Insider Payroll paid only pursuant to UST guidelines) | | 8,750 | 27.78% | 8,750 | 27.78% | 8,750 | 27.78% | 8,750 | 27.78% | **35,001** | 27.78% |
| Alarm & Security | | 32 | 0.10% | 32 | 0.10% | 32 | 0.10% | 32 | 0.10% | **128** | 0.10% |
| Automobile Expense | | 102 | 0.32% | 102 | 0.32% | 102 | 0.32% | 102 | 0.32% | **408** | 0.32% |
| Bank Service Charges | | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | **500** | 0.40% |
| Computer and Internet | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Dues and Subscriptions | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Payroll Processing Fees | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Research & Development | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Charitable Donations | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Marketing | | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | **500** | 0.40% |
| Backoffice Software | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Janitorial Expense | | 63 | 0.20% | 63 | 0.20% | 63 | 0.20% | 63 | 0.20% | **250** | 0.20% |
| Telephone Expense | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Parking | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Loan Fee | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Credit Card/Merchant Fee | | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | **1,000** | 0.79% |
| Misc. Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Warehouse Expense | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Continuing Education | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| **Total S, G & A Expenses** | | **15,623** | | **15,623** | | **15,623** | | **15,623** | | **62,492** | |
| Operating Expense (% of GR) | | **49.60%** | | **49.60%** | | **49.60%** | | **49.60%** | | **49.60%** | |
| | | | | | | | | | | | |
| **Net Profit Before Taxes** | | **6,427** | | **6,427** | | **6,427** | | **6,427** | | **25,707** | |

**Dot Dot Smile, LLC**
**Income Statement**
**FYE 2022 - Weekly**

| | 6-Sep-22 | Forecast 11/28-12/2 | | Forecast 12/5-12/9 | | Forecast 12/12-12/16 | | Forecast 12/19-12/23 | | Forecast Dec. 2022 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | |
| **Gross Receipts** | | **31,500** | | **31,500** | | **31,500** | | **31,500** | | **126,000** | |
| | | | | | | | | | | | |
| **Cost of Sales** | | | | | | | | | | | |
| Beginning Inventory | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Cost of Goods Sold | | 9,450 | 30.00% | 9,450 | 30.00% | 9,450 | 30.00% | 9,450 | 30.00% | **37,801** | 30.00% |
| Merchant Fees | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Freight and Shipping | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Ending Inventory | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| **Cost of Goods Sold** | | **9,450** | **30.00%** | **9,450** | **30.00%** | **9,450** | **30.00%** | **9,450** | **30.00%** | **37,801** | **30.00%** |
| YTD COGS | | | | | | | | | | | |
| **Gross Profit** | | **22,050** | | **22,050** | | **22,050** | | **22,050** | | **88,199** | |
| GPM (% of GRcpts) | | **70.00%** | | **70.00%** | | **70.00%** | | **70.00%** | | **70.00%** | |
| YTD Gross Profit | | | | | | | | | | | |
| **General & Adminstrative Expenses** | | | | | | | | | | | |
| Advertising and Promotion | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Commissions Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Contract Labor | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Depreciation Expense | | 625 | 1.98% | 625 | 1.98% | 625 | 1.98% | 625 | 1.98% | **2,500** | 1.98% |
| Employee Benefits | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Insurance Expense | | 1,036 | 3.29% | 1,036 | 3.29% | 1,036 | 3.29% | 1,036 | 3.29% | **4,145** | 3.29% |
| Interest Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| CFO Fee (subject to court approval) | | 875 | 2.78% | 875 | 2.78% | 875 | 2.78% | 875 | 2.78% | **3,500** | 2.78% |
| SubChapter V and Other Chapter 11 Administrative Fees (subject to court approval) | | 1,165 | 3.70% | 1,165 | 3.70% | 1,165 | 3.70% | 1,165 | 3.70% | **4,660** | 3.70% |
| Office Expense | | 38 | 0.12% | 38 | 0.12% | 38 | 0.12% | 38 | 0.12% | **150** | 0.12% |
| Rent Expense | | 1,250 | 3.97% | 1,250 | 3.97% | 1,250 | 3.97% | 1,250 | 3.97% | **5,000** | 3.97% |
| Tax & License | | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | **1,000** | 0.79% |
| Travel Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Deductible Meals | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Utilities | | 375 | 1.19% | 375 | 1.19% | 375 | 1.19% | 375 | 1.19% | **1,500** | 1.19% |
| Payroll Expenses (Insider Payroll paid only pursuant to UST guidelines) | | 8,750 | 27.78% | 8,750 | 27.78% | 8,750 | 27.78% | 8,750 | 27.78% | **35,001** | 27.78% |
| Alarm & Security | | 32 | 0.10% | 32 | 0.10% | 32 | 0.10% | 32 | 0.10% | **128** | 0.10% |
| Automobile Expense | | 102 | 0.32% | 102 | 0.32% | 102 | 0.32% | 102 | 0.32% | **408** | 0.32% |
| Bank Service Charges | | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | **500** | 0.40% |
| Computer and Internet | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Dues and Subscriptions | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Payroll Processing Fees | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Research & Development | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Charitable Donations | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Marketing | | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | 125 | 0.40% | **500** | 0.40% |
| Backoffice Software | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Janitorial Expense | | 63 | 0.20% | 63 | 0.20% | 63 | 0.20% | 63 | 0.20% | **250** | 0.20% |
| Telephone Expense | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Parking | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Loan Fee | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Credit Card/Merchant Fee | | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | 250 | 0.79% | **1,000** | 0.79% |
| Misc. Expense | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| Warehouse Expense | | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | 188 | 0.60% | **750** | 0.60% |
| Continuing Education | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | **0** | 0.00% |
| **Total S, G & A Expenses** | | **15,623** | | **15,623** | | **15,623** | | **15,623** | | **62,492** | |
| Operating Expense (% of GR) | | **49.60%** | | **49.60%** | | **49.60%** | | **49.60%** | | **49.60%** | |
| | | | | | | | | | | | |
| **Net Profit Before Taxes** | | **6,427** | | **6,427** | | **6,427** | | **6,427** | | **25,707** | |

EXHIBIT 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JEFFREY S. SHINBROT, ESQ. (SBN 155486)
jeffrey@shinbrotfirm.com
JEFFREY S. SHINBROT, APLC
15260 Ventura Blvd., Suite 1200
Sherman Oaks, CA 91403
Telephone: (310) 659-5444
Fax: (310) 878-8304
Proposed Reorganization Counsel for
Debtor-In-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

In re

DOT DOT SMILE, LLC

             Subchapter V Chapter 11
Debtor and Debtor-In-
Possession.

Case Number: 6:22-bk-13361 WJ

Chapter 11

**ORDER GRANDING DEBTOR'S
EMERGENCY MOTION FOR
ORDER AUTHORIZING:**

**(1)    USE OF CASH
COLLATERAL ON AN INTERIM
BASIS; AND**

**(2)    SETTING FINAL HEARING
ON USE OF CASH COLLATERAL**

The emergency hearing on DOT DOT SMILE, LLC, the debtor and debtor-in-possession in the above entitled Chapter 11 proceeding ("Debtor" or "DDS pursuant 11 U.S.C. §§ 105(a), 361, 363, 1107(a) and 1109, Bankruptcy Rule 4001, and Local Bankruptcy Rule 2081-1 for an order granting use of cash collateral on an interim basis and setting a final hearing thereon (the "Motion") came for hearing before the Honorable Wayne E. Johnson, appearances were made as noted at the time of hearing. The Court having considered the Motion and good cause appearing hereby Orders as follows:

(1)    The Debtor is hereby authorized to use of all cash and cash

        equivalents on hand and hereafter received, on an interim basis,

1    to pay ordinary and necessary operating expenses in accordance

2    with the budget attached as Exhibit "1" to the accompanying

3    Declaration of Jeffrey Thompson (the "Budget "), and

4    permitting the carryover of any unused but authorized use of

5    cash from month-to-month;

6    (2)    The Debtor to exceed any line item in the Budget by up to

7    fifteen percent (15%) in any one month, as long as the overage

8    for all items in the aggregate does not exceed fifteen percent

9    (15%) of the total budget amount for that month, with the

10    budget savings in one month to be carried over into subsequent

11    months.

12    (3)    Creditors alleging an interest in cash collateral are hereby

13    granted replacement liens in the proceeds of their respective

14    collateral to the extent any such creditor had a valid security

15    interest in such collateral on the Petition Date.

16    (4)    A final hearing on use of cash collateral shall be hold as

17    follows:

18

19    Date:
     Time:

20    Place:

21    **IT IS SO ORDERED.**

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

15260 Ventura Blvd., Suite 1200
Sherman Oaks, CA  91403

A true and correct copy of the foregoing document entitled (*specify*) **NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING: (1)    USE OF CASH COLLATERAL ON AN INTERIM BASIS; AND (2) SETTING FINAL HEARING ON USE OF CASH COLLATERAL MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JEFFREY E. THOMPSON ANNEXED HERETO [LBR FORM 4001-2 & ADDITIONAL EXHIBITS FILED SEPARATELY HEREWITH]:**  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below

**X  1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 9/8/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Caroline Renee Djang (TR)**    cdjang@buchalter.com,
  C190@ecfcbis.com;docket@buchalter.com;lverstegen@buchalter.com
- **Abram Feuerstein**    abram.s.feuerstein@usdoj.gov
- **Everett L Green**    everett.l.green@usdoj.gov
- **Cameron C Ridley**    Cameron.Ridley@usdoj.gov
- **Jeffrey S Shinbrot**    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov

 **X  SERVED BY UNITED STATES MAIL**:  On (*date*) 9/8/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

X  Service list attached.

**X  3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 9/8/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

///
///

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Judges Copy
Hon. Wayne Johnson
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 385
Riverside, CA 92501-3819

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/8/2022 | Sandra Rodriguez | /s/Sandra Rodriguez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                      **F 9013-3.1.PROOF.SERVICE**

Dot Dot Smile, LLC   6:22-bk-13361-WJ

**Secured Creditors**

Cedar Advance LLC
Cedar Advance LLC
c/o Lieberman & Klestzick, LLP
71 S. Central Ave., 2nd FL
Valley Stream, NY 11580

Cedar Advance LLC
c/oYonatan Klestzick Esquire
Lieberman & Klestzick, LLP
PO Box 356
Cedarhurst, NY 11516
Fax: 516-900-6720
Email: YKleszick@landklegal.com

Wynwood Capital Group, LLC
20200 W. Dixie Hwy.
Miami, FL  33190
Ph:305-487-8858

Wynwood Capital Group, LLC
Isaac H. Greenfield, Esquire
Law Offices of Isaac H. Greenfield, PLLC
2 Executive Blvd., Ste.  305
Suffern, NY  10901
Fax: 516-387-1117
Phone: 718-564-6268

Fox Capital Group, INc.
Ph: 1800-895-4424
Fax: 1866-557-0455
underwriting@foxbusinessfunding.com

Fox Capital Group, Inc.
c/o Lieberman & Klestzick, LLP
71 S. Central Ave., 2nd FL
Valley Stream, NY 11580

Fox Capital Group, INc.
c/o Yonatan Klestzick Esquire
Lieberman & Klestzick, LLP
PO Box 356
Cedarhurst, NY 11516

Fax: 516-900-6720
Email: YKleszick@landklegal.com


EFB Holdings LLC
Dba Everest Business Funding
5 West 37th Street, Suite 1100
New York, NY  10018
Fax # (888) 493-4091
isosupport@ev-bf.com

Quick Funding Group LLC
157 Church Street Suite 1971
New Haven, CT 06510

Quick Funding Group, LLC
c/o Steven Zakharyayev, Esquire
The Law Offices of Steven Zakharyayev, LLC
10 W. 37th Street, RM 602
New York NY 100118
legalDepartment@EmpireRecover.com
201-716-0681

Network Ventures, LLC
Calvin Becerra
c/o Mark Mazda, Esquire
Law Office of Mark Mazda
2601 Main Street Ste. 1200
Irvine, CA 92614
Ph: 949-222-9182
Fax: 949-222-9199
Email: mark@markmazda.com

CloudFund LLC
400 Rella Blvd., Suite 165-101
Suffern, NY 10901

Corporation Service Company
Delta Bridge/Cloudfund, LLC
P.O. Box 2576
Springfield, IL 62708
contact@deltabridge.us

Mercury Funding Group, Inc.,
1200 River Avenue
Lakewood, NJ  08701

Ph: 877-625-1825
info@mercuryfundingllc.com


Wells Fargo Equipment Finance
Manufacturer Services Group
PO Box 1433
Des Moines, IA 50306

Wells Fargo Financial Services
P.O. Box 10347
Des Moines, IA 50306

**<u>Top 20 Unsecured Creditors</u>**

American Express
P.O. Box 981537
El Paso, TX 79998
(888) 258-3741

ASC Staffing Group
14880 Monte Vista Avenue
Chino, CA 91710
(909) 393-0094
chino@ASCStaffingGroup.com

Bank of America Business Card (NOTHING)
P.O. Box 15796
Wilmington, DE 19886-5796

Bank of America (NOTHING)
P.O. Box 17237
Wilmington, DE 19886-7237

Berkley Net Insurance Company
PO Box 63929
Cincinnati, OH  45263

BerkleyNet-Headquarters
9301 Innovations Dr., Ste. 200
Manassas, VA 20110
E-mail: service@berkleynet.com

Capital One
P.O. Box 60599
City of Industry 91716

Phone# (800) 867-0904

Fed Ex Express-Headquarters
942 S. Shady Grove Rd.
Memphis, TN  38120
Ph: 901-818-7500


Fashion Color Inc.
DBA One Textile
3480 S. Broadway
Los Angeles, CA 90007
Fax # (310) 878-0150
contact@onetextile.com

State Court Counsel for Fashion Color Inc.
Greenbaum Law Group LLP
Martin B. Greenbaum, Esquire
160 Newport Center Drive Suite 110
Newport Beach, CA 92660P
Ph: 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
Fax: 949-760-1300
e-mail: mgreenbaum@collectionlaw.com

Legacy Line Inc.
738 E. 8th Street
Los Angeles, CA 90021
Ph: 213-228-9995

Mailing Address:
1830 20th Street
Los Angeles, CA 90058

Mercedes Benz Financial Services
36455 Corporate Drive
Farmington, MI 48331
Fax (248) 991-6962

Mirror Fashion Co. LTD
Unit 04 7/F, Bright Tower
No. 33 Mong Kok, Hong Kong

Radiant Global Logistics
Attn: Accounts Payable
21175 South Main Street
Carson, CA 90745

PH: 866-225-5289
e-mail: laxops@radiantdelivers.com

**State Agencies**

Franchise Tax Board Bankruptcy Section, MS-A340
PO Box 2952
Sacramento, CA 95812-2952

California Dept. of Tax & Fee Admin.
PO Box 942879
Sacramento, CA 94279-3535

Employment Development Department
Bankruptcy Group MIC92E
PO Box 826880
Sacramento, CA 94280-0001

State Board of Equalization
Account Information Group, MIC: 29
PO Box 942879
Sacramento, CA  94279-0029